IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOSE MANUEL AMARO<br>Plaintiff,<br><br>v.<br><br>CABOT MICROELECTRONICS<br>CORPORATION and FLOWCHEM, LLC<br>Defendants. | §<br>§<br>§   CIVIL ACTION NO. 4:21-cv-901<br>§<br>§   JURY<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, JOSE MANUEL AMARO ("Amaro" or "Plaintiff"), Plaintiff in the above styled and numbered cause, and files this Plaintiff's Original Complaint, complaining of CABOT MICROELECTRONICS CORPORATION and FLOWCHEM, LLC (collectively, the "Defendants"), and for cause of action, would show as follows:

### I. INTRODUCTION

1. This action seeks back pay, front pay, compensatory damages, mental anguish damages, liquidated damages (where appropriate), punitive/exemplary damages, attorneys' fees, expert witness fees, taxable costs of court, and pre-judgment and post-judgment interest for discrimination suffered by Amaro in the course of his employment with Defendants. Amaro complains that he was discriminated against regarding the terms and conditions of his employment because of his race, national origin, and age over 40. In addition, the Defendants retaliated against Amaro after he engaged in a protected activity. These claims are brought under Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination in Employment Act of 1967 (ADEA), and Chapter 21 of the Texas Labor Code (TCHRA). Amaro also asserts claims for interference

with his rights under the Family and Medical Leave Act (FMLA) and violations of 42 U.S.C. § 1981. Amaro demands a jury on all issues triable to a jury.

## II. PARTIES

2. Amaro is a citizen of the United States and is currently a resident of Tomball, Texas.

3. Defendant Cabot Microelectronics Corporation ("Cabot") is a Delaware corporation with its principal place of business at 870 N. Commons Dr., Aurora, IL 60504. Cabot regularly conducts business in this judicial district, including in Houston, Texas, and maintains offices in Houston, Texas. Defendant's registered agent for service of process is Corporation Service Company, who may be served at 211 E. 7th Street, Suite 620, Austin, TX 78701.

4. Defendant Flowchem, LLC ("Flowchem") is a Delaware corporation with its principal place of business at 870 N. Commons Dr., Aurora, IL 60504. Cabot regularly conducts business in this judicial district, including in Houston, Texas, and maintains offices in Houston, Texas. Defendant's registered agent for service of process is Corporation Service Company, who may be served at 211 E. 7th Street, Suite 620, Austin, TX 78701.

## III. JURISDICTION AND VENUE

5. This action is brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-2, *et. seq* and the ADEA. This court has federal question jurisdiction. *See* 28 U.S.C. § 1331. Amaro also asserts state law claims under TCHRA. This court has supplemental jurisdiction over Amaro's state law claims. *See* 28 U.S.C. § 1367.

6. The unlawful employment practices were committed within the jurisdiction and venue of the United States District Court for the Southern District of Texas, Houston Division, as all of the acts and conduct charged herein occurred in this District. *See* 28 U.S.C. § 1391(b)(2).

7. This Court has jurisdiction over all claims in this action. As stated below, all administrative prerequisites have been met.

## IV. PROCEDURAL REQUISITES

8. On May 22, 2020, Amaro filed a Charge of Discrimination (the "Charge") against Defendants under Charge Number 460-2020-04100 with the U.S. Equal Employment Opportunity Commission ("EEOC"). Per EEOC policy, the Charge was co-filed with the state agency (Texas Workforce Commission – Civil Rights Division). Amaro amended his Charge on July 29, 2020. In his Amended Charge, Amaro asserted that Defendants discriminated against him because of his race, national origin, and age. Amaro also asserted claims for retaliation. The EEOC issued its Notice of Right to Sue letter on December 31, 2020. This suit is timely filed because it is filed within the prescribed time. The Notice of Right to Sue is attached to this Complaint as **Exhibit 1** and is incorporated by reference.

9. All conditions precedent to filing this complaint have been met.

## V. FACTS

10. Amaro was hired by Defendants on December 2, 2002 and held the position of Production Manager. Amaro is a Hispanic male, age 59.

11. Amaro worked at the Defendants' facility located at 20333 Blinka Road, Waller, Texas 77484.

12. As Production Manager, Amaro was responsible for leading the production process and supervising a team of production operators, including, but not limited to, controlling equipment systems that process chemical substances into specific products, monitoring the production process, handling, managing and loading raw materials into processing equipment and

monitoring the equipment performance. Amaro reported to Dan Bopp, Plant Manager. Mr. Bopp is a Caucasian male.

13. Amaro was responsible for supervising employees on the plant operations team in his role as Production Manager. Amaro is bilingual (Spanish and English), and he regularly communicated in Spanish to other members of the plant operations team since many of them felt more comfortable communicating in Spanish.

14. At all times applicable hereto, Amaro was an exemplary employee and fully qualified to perform his job.

15. Due to his position as Production Manager and ability to speak Spanish, many of Defendants' Hispanic employees would report their concerns to Amaro who would then pass them along to upper management on their behalf. In approximately August of 2019, Amaro reported discrimination against Hispanic employees to his supervisor and human resources (HR) representative Nancy Santos. The specifics were that Caucasian employees were being promoted to operators while Hispanic employees were not. The Hispanic employees Amaro worked with asked him to take this report to management. Rather than investigate this claim of discrimination, Amaro was disciplined for reporting this to management. Defendants' disciplined Amaro because he engaged in a protected activity under Title VII and TCHRA.

16. Also around this time, Amaro reported to Defendants his need to take medical leave due to an illness. His leave was approved under FMLA. When he returned to work in November 2019, Amaro found that all of his belongings had been piled into a corner of an office and he no longer had a workspace. Amaro was also informed that he had been replaced by a younger (under 40) male employee who the Defendants required Amaro to train. Amaro was also notified that he

had been demoted to the position of shift leader when he previously had been the Production Manager.

17. Amaro was told by his new Plant Manager Kyle Skala (Caucasian male) that the company was shifting to hiring more white people because "there were too many Mexicans." Skala also informed Amaro that he believed Amaro was "not a good fit" because he did not speak English well and because Amaro would stick up for the older Hispanic employees, including when he passed along their concerns about discrimination. Skala indicated to Amaro that the company was going a different direction preferring to hire younger Caucasian employees.

18. In addition to being replaced by a younger employee, being demoted, and being told he was not appreciated because he did not speak English well, the Defendants' overall attitude toward Amaro changed after he returned from FMLA leave. Amaro was excluded from meetings and denied an office to complete his managerial duties.

19. In February 2020, the Defendants terminated Amaro's employment under the false and pretextual reason of a safety violation. Amaro denied violating any company policy or safety policy and believes the reason given for his termination was merely pretext when the actual reason was discrimination and retaliation as set forth herein.

20. No other Caucasian employees were treated in this way. No employee under 40 years of age was treated in this way.

21. When Amaro was terminated he lost his primary source of income and ability to support his family. He had been an employee of Defendants for almost twenty years. The economic loss to Amaro was substantial.

22. In addition to lost benefits and pay, Amaro has suffered mental anguish, embarrassment, and emotional suffering because of the acts of Defendants. He been treated by a doctor for conditions relating to this mental anguish.

23. As a direct and proximate result of Defendants' discriminatory conduct, Amaro has suffered damages including, but not limited to, back pay, front pay, mental anguish, attorney's fees, and costs of court. Amaro also seeks damages for mental anguish and punitive/liquidated damages where permitted by law. When a federal claim overlaps with a pendant state claim, the plaintiff is entitled to the maximum amount recoverable under either the federal or state claim. *Cryak v. Lemon*, 919 F.2d 320, 326 (5th Cir. 1990). As shown above, Defendants acted with malice or reckless indifference to Amaro's rights.

## VI. CAUSES OF ACTION

**COUNT I – RACE AND NATIONAL ORIGIN DISCRIMINATION UNDER TITLE VII**

24. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

25. Defendants discriminated against Amaro in violation of Title VII when they treated him differently on account of his Hispanic race and national origin.

26. Amaro was subjected to different terms and conditions of employment and was ultimately terminated by Defendants because of his race and national origin.

27. Amaro belongs to a protected class.

28. Amaro was qualified for his position.

29. Amaro was discharged on account of his protected status while other employees of Defendants were treated more fairly. Amaro can show disparate treatment by both direct and circumstantial evidence.

30. Defendants committed a violation because race and national origin was a motivating factor for a discriminatory employment practice (termination), even though other factors also motivated the practice.

31. As a result of Defendants' discriminatory actions, Amaro has suffered lost wages and benefits in the past and future, emotional pain and suffering, and mental anguish, all of which were caused by Defendants' treatment of Amaro. In all probability, Amaro will continue to suffer such damages in the future.

32. Further, Defendants acted with malice or, in the alternative, with reckless indifference to the protected rights of Amaro.

### COUNT II – RACE AND NATIONAL ORIGIN DISCRIMINATION UNDER TCHRA

33. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

34. Defendants committed an unlawful employment practice when, because of Amaro's race and national origin, they discharged him, and discriminate in any other manner against him in connection with compensation or the terms, conditions, or privileges of his employment. Defendants also committed a violation when they limited, segregated, or classified Amaro in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

### COUNT III – AGE DISCRIMINATION UNDER ADEA

35. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

36. Defendants violated the ADEA when they terminated Amaro's employment because of his age over forty. Amaro was qualified to perform his job, but he was replaced by a younger employee.

### COUNT IV – AGE DISCRIMINATION UNDER TCHRA

37. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

38. Defendants violated the age discrimination provisions of TCHRA when they used Amaro's age over forty as a factor in their decision to terminate his employment. Amaro was qualified to perform his job, but he was replaced by a younger employee.

### COUNT V – RETALIATION UNDER TITLE VII AND TCHRA

39. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

40. When Amaro reported his employees' concerns of race discrimination to management, he engaged in a protected activity.

41. When Defendants demoted Amaro and ultimately terminated his employment because of his protected activity, they retaliated against him in violation of Title VII and TCHRA.

### COUNT VI – VIOLATION OF 42 U.S.C § 1981

42. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

43. Like Title VII, 42 U.S.C. § 1981 also prohibits employment discrimination on the basis of race. *Johnson v. Railway Express Agency*, 421 U.S. 454, 459–60 (1975). Specifically, § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

Claims of race-based discrimination brought under § 1981 are governed by the same framework applied to claims of employment discrimination brought under Title VII. *See Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996)).

44. By the conduct described above, Defendants intentionally deprived Amaro of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of the contractual employment relationship with Defendants, in violation of 42 U.S.C. §1981.

45. As a result of Defendants' discrimination in violation of Section 1981, Amaro has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to monetary relief; and Amaro has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling him to compensatory and other damages.

### COUNT VII – INTERFERENCE WITH RIGHTS UNDER FMLA

46. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

47. Amaro was an eligible employee under the FMLA. In fact, his FMLA leave had been approved by Defendants.

48. Defendants were subject to the FMLA.

49. Amaro was entitled to the leave under FMLA that he requested.

50. Amaro gave notice of the leave or otherwise complied with company policy concerning notice and leave.

51. Defendants ultimately interfered with Amaro's rights under FMLA, and caused Amaro's damages by failing to reinstate him and ultimately terminating his employment.

## VII. DAMAGES

52. As a result of Defendants' unlawful conduct, Amaro seeks the following relief: (1) back pay, including, but not limited to, his salary/wage, lost overtime, bonuses, and benefits; (2) front pay, including, but not limited to, his salary/wage, lost overtime, bonuses, and benefits; (3) other actual and compensatory damages; (4) costs of court, expert fees, and attorneys' fees; (5) damages for mental anguish and emotional distress in the past and future; and (6) punitive damages. Where permitted by statute, Amaro also seeks liquidated damages.

53. Additionally, since Defendants' actions were committed maliciously, willfully, or with reckless indifference to Amaro's protected rights, Amaro is entitled to recover punitive, liquidated, and/or exemplary damages in an amount sufficient to deter Defendants and others similarly situated from this conduct in the future.

## VIII. JURY DEMAND

54. Amaro requests a trial by jury on issues triable by a jury in this case.

## IX. PRAYER

WHEREFORE, Plaintiff Jose Manuel Amaro respectfully prays that upon final trial hereof, the Court enter judgement in favor of Plaintiff, that this Court grant him appropriate back pay, including, but not limited to, his salary, bonuses, and benefits; front pay, including his salary, bonuses, and benefits; mental anguish and emotional distress in the past and the future; compensatory damages; punitive/liquidated damages as allowed by law; reasonable attorneys' fees both for the trial of this cause and any and all appeals as may be necessary; all expert witness fees incurred in the preparation and prosecution of this action; pre-judgment and post-judgment interest

as allowed by law; taxable court costs; and any such additional and further relief that this Court may deem just and proper.

Dated: March 18, 2021

Respectfully submitted,

THE VERDE LAW FIRM, PLLC

/s/ Joshua A. Verde
Joshua A. Verde
attorney-in-charge
State Bar No. 24077590
Fed ID No. 1760723
4600 Highway 6 North, Suite 320
Houston, TX 77084
Phone: 713-909-4347
Fax: 713-588-2431
josh@verde-law.com

ATTORNEY FOR PLAINTIFF
JOSE MANUEL AMARO